UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARGARETTA BLAND, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>LVNV FUNDING, LLC, )<br>)<br>Defendant. ) | No. 4:15 CV 425 RWS |

## MEMORANDUM AND ORDER

This matter is before me on Defendant LVNV Funding, LLC's Motion to Dismiss in this Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), action. The issues are fully briefed and I have heard oral argument on the motion. For the reasons that follow, I will grant in part and deny in part defendant's motion to dismiss.

## Background

This action arises out of a debt collection lawsuit. In 2002, Sears Roebuck Co. sued plaintiff to collect on an unpaid credit card bill. Plaintiff did not respond to the lawsuit and Sears took a default judgment in the amount of $3,387.96. Sears assigned the 2002 judgment to defendant,[1] a debt collector. Defendant hired the law firm Miller & Steeno, P.C. ("Miller") to revive the judgment. Miller filed a motion to revive the judgment, and then somewhat sporadically sought to serve plaintiff with process between November 2011 and June 2014. Plaintiff was served with the revival suit on June 25, 2014. The state court held a hearing on defendant's motion to revive judgment. Again, plaintiff did not respond to the motion or appear at the hearing. On August 7, 2014, the Circuit Court of St. Louis City, Missouri revived the

---

[1] Plaintiff contends that the assignment was "botched" and is invalid.

judgment against plaintiff, giving full force and effect to the 2002 judgment in the amount of $3,387.96. Plaintiff never appealed the default judgment or the revival of the judgment.

In late August or early September 2014, defendant, through Miller, contacted plaintiff about the debt by phone. Plaintiff alleges that the phone call was the "initial communication" as defined by the FDCPA, triggering defendant's requirement to provide plaintiff with notice of her dispute and validation rights. Plaintiff alleges that defendant never sent her notification of her dispute and validation rights, nor did defendant provide plaintiff with written notice of the amount of the debt or a copy of either of the state court judgments. Plaintiff alleges that during the phone call, defendant told plaintiff it would take legal action such as garnishment if she did not make payment that day. Shortly after receiving the phone call, plaintiff started making payments to defendant.

In January 2015, Miller sent plaintiff a collection letter. Plaintiff alleges that the letter did not state the amount of the debt and concealed the fact that defendant was assessing interest on the debt. The letter instructed plaintiff to make $50 monthly payments through April 2015 and stated that after April 2015, Miller would seek to collect the full amount due.

On February 6, 2015, plaintiff filed this action in the Circuit Court of St. Louis County, Missouri, alleging violations of the FDCPA, abuse of process, and violation of the Missouri Merchandising Practices Act, RSMo. § 407.025(1) ("MMPA"). Defendant removed this action to this Court on March 9, 2015. On April 7, 2015, plaintiff filed her First Amended Complaint.

In addition to plaintiff's state law claims, plaintiff alleges that defendant violated §§ 1692d, 1692e, 1692f, and 1692g of the FDCPA because defendant (1) fooled plaintiff into believing that Sears, rather than defendant, was pursuing her, (2) failed to notify plaintiff of her dispute and validation rights, (3) overshadowed plaintiff's dispute and validation rights,

(4) attempted to collect a debt from plaintiff when it had no legal standing to do so, (5) failed to accurately state the amount of the debt, and (6) used unfair and unconscionable practices to attempt to collect the debt.

On April 20, 2015, defendant filed this motion to dismiss, arguing that plaintiff has failed to state a claim under Fed. R. Civ. P. 12(b)(6).

## Legal Standard

In ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), I must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While a court must accept factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Carton v. Gen. Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (internal citations omitted).

## Discussion

### A. FDCPA

"The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors . . ." Dunham v. Portfolio Recovery Assocs., LLC, 663 F.3d 997, 1000 (8th Cir. 2011). When a court is evaluating a debt collection communication it must view it "through the

eyes of an unsophisticated consumer." Freyermuth v. Credit Bureau Services, Inc., 248 F.3d 767, 771 (8th Cir. 2001). This standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder." Strand v. Diversified Collection Services, Inc., 380 F.3d 316, 317–18 (8th Cir. 2004) (internal quotations and citations omitted). It "protects the uninformed or naive consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters." Id.

Section 1692d of the FDCPA provides that "a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt." Section 1692e provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692f provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." Section 1692g sets out information a debt collector must provide to a consumer within five days after the initial communication of a debt collection.

1. Section 1692g Dispute and Validation Rights

Plaintiff alleges that defendant violated 15 U.S.C. § 1692g by failing to send plaintiff the requisite written notice informing plaintiff of her rights under the FDCPA. Section 1692g requires a debt collector to provide to a consumer certain information within five days after the initial communication of a debt collection. The required information includes "the amount of the debt" and "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(1),(2). The notice must also contain:

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

If a consumer properly disputes the debt within the 30-day period, the debt collector "shall cease collection of the debt" until the debt collector verifies the disputed information and provides the consumer with copies of the verifying information, such as the judgment. 15 U.S.C. § 1692g(b). Furthermore, "[a]ny collection activities and communication during the 30–day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." 15 U.S.C. § 1692g(b). That said, the 30-day period "is not a grace period: a debt collector is perfectly free to demand payment and pursue collection efforts, including an appropriate lawsuit against the debtor, within the validation period. Thus, during the validation period, the debtor's right to dispute coexists with the debt collector's right to collect." Durkin v. Equifax Check Servs., Inc., 406 F.3d 410, 416 (7th Cir. 2005) (internal quotations and citations omitted).

Plaintiff alleges that the initial communication was a phone call in the fall of 2014. Defendant argues that it is implausible that the fall 2014 phone call would constitute the initial communication based on the lengthy history of the case. Defendant argues that I should assume that defendant sent plaintiff notice of her dispute and validation rights in 2011 or 2012 when it

allegedly began its collection attempts.² Plaintiff counters that the only collection activity that occurred before the fall 2014 phone call was the filing of formal pleadings to enforce Sears' judgment. Because "[a] communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section," plaintiff has properly pleaded that the phone call was the initial communication for FDCPA purposes. 15 U.S.C. § 1692g(d). As a result, defendant was required to provide plaintiff with written notice of her dispute and validation rights within five days of the phone call. Other than defendant's argument that I should assume it provided plaintiff with the requisite notice, defendant does not dispute that it failed to provide the requisite written notice. Failure to provide such notice (even where, as here, it appears that there is no dispute about the validity of the underlying debt) is a clear violation of § 1692g.³ As a result, plaintiff has stated a claim under § 1692g.

Plaintiff also alleges that defendant overshadowed her dispute and validation rights because defendant demanded that she pay the debt immediately during the phone call. I must evaluate the conversation from the perspective of an "unsophisticated consumer," as described

---

² Defendant also argues that, assuming the requisite notifications were sent in 2011 and 2012, any claims based on those actions are time-barred by the FDCPA's one-year statute of limitations. See 15 U.S.C. § 1692k(d). Because assuming that defendant contacted plaintiff and provided her the requisite notice in 2011 and 2012, despite the pleadings alleging otherwise, would be completely inconsistent with the standards of review for a motion to dismiss, I need not and therefore will not address defendant's timeliness argument.

³ Although the FDCPA clearly states that the dispute and validation notice must be sent within in five days of the initial communication, I question the application of that rule to cases like this where it appears that there is no legitimate dispute about the validity of plaintiff's liability for the debt. The record shows that the state court twice entered judgment that plaintiff was liable for the debt – first, when it entered default judgment, and second, when it revived the judgment. Because there is a final judgment on the issue of liability, it is unclear what, if anything, plaintiff would dispute if she had been given the requisite notice. However, even if dispute would be futile, because the FDCPA requires that notice be given, that the debtor be informed of his or her rights to dispute and obtain validation of the debt, and a proper notice of dispute triggers the debt collector's obligation to obtain and provide the debtor with validation, including a copy of a judgment, I cannot say that plaintiff has failed to state a claim. See 15 U.S.C. § 1692g.

above.[4]  Strand, 380 F.3d at 317-18.  If a debt collector asserts that payment must be made within the dispute period without explaining that the consumer retains her dispute and verification rights, the collector has likely overshadowed a plaintiff's dispute rights.  Johnson v. Evans & Dixon, LLC, No. 4:13-cv-671-NAB, at *7–16 (E.D. Mo. April 8, 2014).  In contrast, there is generally no overshadowing where debt collectors request payment but do not indicate that the payment must be made before the expiration of the 30-day dispute window.  Founie v. Midland Credit Mgmt., Inc., 2014 WL 6607197, at *3 (E.D. Mo. Nov. 19, 2014).  Here, plaintiff alleges that during the phone call, defendant "threatened Plaintiff with legal action such as garnishment if Plaintiff would refuse to make a payment on the debt to Defendant that day."  As plaintiff alleges that defendant demanded immediate payment within the 30-day dispute window, I find that plaintiff has sufficiently alleged a violation of § 1692g.

   2.  Interest and the Amount of the Debt

Plaintiff alleges that defendant has never "told Plaintiff the accurate amount of her debt because both Miller and Defendant have refused to tell Plaintiff the actual judgment amount and/or have refused to tell Plaintiff that the judgment amount was accruing interest at any particular rate."  Section 1692g(a)(1) requires a debt collector to accurately state the "amount of the debt" in an initial collection letter.  Section 1692e(2)(A) provides that a debt collector cannot make a false representation as to "the character, amount, or legal status of any debt."

---

[4] Circuits are split on whether applying the unsophisticated consumer standard to collection notices and letters under the FDCPA is a matter of law for judges to decide or a question of fact better left to juries.  Compare Johnson v. Revenue Mgmt. Corp., 169 F.3d 1057, 1060 (7th Cir. 1999); Kistner v. Law Offices of Michael P. Margelefsky, LLC, 518 F.3d 433, 440–41 (6th Cir. 2008) (holding it is a question of fact) with Russell v. Equifax A.R.S., 74 F.3d 30, 33, 35 (2d Cir. 1996); Wilson v. Quadramed Corp., 225 F.3d 350, 353 (3d Cir. 2000); Terran v. Kaplan, 109 F.3d 1428, 1432-33 (9th Cir. 1997); Whiting v. AARP, 637 F.3d 355, 364 (D.C. Cir. 2011) (holding that it may be decided as a matter of law).  The United States Court of Appeal for the Eighth Circuit has not squarely addressed this question.  However, this district has concluded that the Eighth Circuit likely would treat it as a question of law, and I agree.  See also Johnson v. Evans & Dixon, LLC, No. 4:13-cv-671-NAB, at *9-11 (E.D. Mo. April 8, 2014).

Plaintiff alleges that in January 2015, defendant, through Miller, sent plaintiff a collection letter telling her to make $50 monthly payments through April 2015. The letter also stated that Miller would refuse to stay execution on the judgment after April 2015. In addition to not stating the debt amount at all, plaintiff claims that the letter misstates the amount of the debt because it concealed that defendant was assessing interest. Plaintiff further alleges that the letter was misleading because an unsophisticated consumer would believe that if she made the payments, the amount of the debt would go down, but instead, the debt has likely increased due to interest.

Defendant argues that it was not required to list the amount of the debt in the January 2015 letter because under § 1692g(1) only an initial notice of the debt must contain the amount of the debt. Defendant contends that because it communicated with plaintiff by phone in fall 2014, the January 2015 letter was not the initial communication. Defendant also argues that the FDCPA does not require a debt collector to warn the consumer that the debt may increase.

Under the appropriate standards, I find that plaintiff has stated a claim based on her allegations that defendant failed to accurately state the amount of the debt. First, for the reasons stated above, I must take as true plaintiff's allegation that the fall 2014 phone call was the first communication between the parties about the debt, and therefore it was the "initial communication." Second, § 1692g(a)(1) requires that *written* notice containing the amount of the debt be sent within five days of the initial communication. As a result, defendant's argument that the fall 2014 phone call would have served to meet that requirement fails. Plaintiff has alleged and defendant has not disputed that defendant never sent a written notice containing the amount of the debt. Plaintiff has stated a claim.

I also find that plaintiff has stated a claim that the January 2015 letter was misleading under § 1692e because it failed to warn that interest was accruing and indicated that making

8

payments would cause the debt to go down. Although the FDCPA does not necessarily require that a collection letter warn that the debt may increase,[5] the failure to disclose the fact that interest is accruing such that making payments in installments would not cause the balance to go down could plausibly mislead an unsophisticated consumer.

    3. <u>Disguised Identity</u>

Plaintiff alleges that defendant violated §§ 1692d-f of the FDCPA by making plaintiff believe that Miller sought to revive the judgment on behalf of Sears rather than on defendant's behalf. Plaintiff pleads that Miller signed the judgment revival pleadings as the attorney for Sears and used the case caption "Sears v. Margaretta Bland" in its January 2015 letter to plaintiff. Plaintiff argues that defendant disguised its identity to conceal the fact that the debt was being collected by a debt collector against whom a plaintiff has statutory dispute rights.

Section 1692d prohibits abusive or harassing conduct in connection with the collection of a debt, such as the use or threat of use of violence, the use of obscene or profane language, or calling a debtor repeatedly or continuously. Section 1692f prohibits the use of unfair or unconscionable means to collect a debt. Such unfair or unconscionable means include, for example, collecting money not authorized by the debt agreement, soliciting postdated payment for the purposes of threatening or instituting criminal prosecution, and communicating with a consumer by post card or otherwise marking an envelope with language that indicates the communication is from a debt collector. 15 U.S.C. § 1692f. Although these examples are not meant to limit the application of §§ 1692d and 1692f, it is clear that plaintiff's allegation that defendant concealed its identity is not the type of conduct prohibited under these sections of the

---

[5] <u>See, e.g.</u>, <u>Adlam v. FMS, Inc.</u>, 2010 WL 1328958 at *3 (S.D.N.Y. Apr. 5, 2010) ("even the most unsophisticated consumer would understand that credit card debt accrues interest").

FDCPA. As a result, plaintiff's claim that defendant concealed its identity does not state a plausible claim under §§ 1692d and 1692f.

Plaintiff has, however, stated a claim under § 1692e, which prohibits the use of false, deceptive, or misleading representations or means in connection with the collection of a debt. Section 1692e(14) in particular provides that a violation occurs when a debt collector uses "any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e. Defendant argues that even the least sophisticated consumer would not be deceived by the use of the "Sears v. Margaretta Bland" case caption or Miller's signing the judgment revival pleadings as the attorney for Sears. While defendant's argument might succeed at trial, when viewed in the context of plaintiff's other allegations, including the claim that defendant obscured its identity to prevent plaintiff from knowing that a debt collector – against whom plaintiff has dispute and validation rights – was collecting the debt, I cannot say that plaintiff has failed to state a claim.

Defendant also argues that plaintiff never pleads that it "used" any name other than its own. Rather, defendant characterizes plaintiff's claim as one that defendant failed to use its own name. Section 1692e, however, is not as narrow as defendant contends. It does not merely prohibit affirmative misrepresentations, but provides that any "false, deceptive, or misleading" representation is prohibited. Under the clear language of § 1692e and federal notice pleading standards, plaintiff's allegations that defendant misled plaintiff into thinking Sears, rather than defendant, was attempting to revive the judgment, states a claim.

4. "Botched Assignment" and Standing

Plaintiff alleges that defendant "botched the assignment" of plaintiff's debt from Sears, that defendant violated RSMo. § 511.690 by failing to attach a proper record of assignment when

10

it filed the motion to revive the judgment, and that defendant does not have standing to collect plaintiff's debt.

Defendant argues that the state court documents contradict and preclude plaintiff's claim. Defendant attaches to its motion the state court record,[6] which includes an Affidavit of Assignment of Judgment that defendant filed on June 27, 2014.[7] Defendant argues that the affidavit demonstrates that it is a proper assignee, and further, that any claims that the assignment was invalid or that defendant lacked standing to revive the judgment in state court are precluded by the doctrine of issue preclusion (also known as collateral estoppel).

"When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Powers v. Credit Mgmt. Servs., Inc., 776 F.3d 567, 572 (8th Cir. 2015) (emphasis omitted) (internal citations omitted). Defendant argues that the state court necessarily determined that defendant had standing to collect the debt, which included the finding that the assignment was valid, and that this determination was essential to the state court's entry of the revival judgment. I agree. Under Missouri Supreme Court Rule 74.09, which the state court cited when it entered its Order and Judgment of Revival of Judgment on August 7, 2014, a judgment may only be revived "pursuant to a motion for revival filed by a *judgment creditor*." (emphasis added). As a result, when the state court revived the judgment, it necessarily found that defendant was a proper judgment creditor, and that finding was essential to the state court's judgment. Additionally, as

---

[6] A court may consider documents that are necessarily embraced by the pleadings, such as the affidavit, in a motion to dismiss without converting it into a motion for summary judgment. Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008) (internal citations omitted).

[7] Defendant also states that the state court documents indicate that the assignment was also filed on December 2, 2011. However, Defendant has not provided a copy of a December 2011 affidavit, nor does the state court docket sheet indicate that anything was filed on December 2, 2011.

standing is a constitutional requirement, the state court would have had to have found that defendant had standing to bring the motion to revive judgment. Under the doctrine of issue preclusion, plaintiff may not relitigate this issue in this case.[8] Additionally, plaintiff's allegation that the "botched assignment" violated RSMo. § 511.690 fails because that statute merely instructs on one possible way an assignment "may" be properly executed.[9] See Boyd v. Sloan, 71 S.W.2d 1065, 1066 (Mo. Ct. App. 1934).

    5. 1692f Claims

Finally, defendant challenges any claim plaintiff brings under § 1692f, which prohibits unfair and unconscionable debt collection practices. Defendant argues that plaintiff has not alleged any misconduct beyond that which plaintiff alleges as violations of other sections of the FDCPA. Section 1692f is not so limited. Plaintiff alleged that defendant used false and misleading statements to collect the debt from plaintiff by misrepresenting that it was Sears, rather than a debt collector assignee; by failing to provide plaintiff with the requisite notice of her dispute and validation rights; by overshadowing plaintiff's dispute and validation rights; and by never accurately stating the amount of the debt. These allegations, taken together, are sufficient to state a claim under § 1692f of the FDCPA.

**B. Abuse of Process**

Plaintiff alleges that defendant abused process in violation of Missouri common law by using certain legal processes in the state court action "solely to harass and intimidate" plaintiff.

---

[8] Furthermore, the state court record indicates that plaintiff failed to appear and show cause why the judgment should not be revived. If plaintiff believed the state court was incorrect, she could have participated in the proceeding or appealed the judgment, but she did not.

[9] Moreover, to the extent that plaintiff is claiming that defendant's alleged violation of state law is a FDCPA violation, plaintiff's claim fails because the violation of a state law does not amount to a FDCPA violation. While § 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt," it is not "an enforcement mechanism for other rules of state and federal law." Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470, 474 (7th Cir. 2007); see also Carlson v. First Revenue Assur., 359 F.3d 1015, 1018 (8th Cir. 2004) ("The FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation.").

> "A pleading alleging abuse of process must set forth ultimate facts establishing the following elements: (1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted."

Ritterbusch v. Holt, 789 S.W.2d 491, 493 (Mo. banc 1990) (internal quotations omitted). Missouri courts have held that an action for an abuse of process does not lie "where the action is confined to its regular function even if the plaintiff had an ulterior motive in bringing the action, or if the plaintiff knowingly brought the suit upon an unfounded claim." Hinten v. Midland Funding, LLC, 2013 WL 5739035, at *10 (E.D. Mo. Oct. 22, 2013) (quoting Howard v. Youngman, 81 S.W.3d 101, 118 (Mo. Ct. App. 2002)). To succeed, plaintiff must show that process was used to accomplish an unlawful end or to compel her to do something which she could not be compelled to do legally. See Howard, 81 S.W.3d at 118.

Plaintiff's complaint fails to state a claim for abuse of process. Even taking plaintiff's factual allegations as true, at most plaintiff alleges that defendant had an ulterior motive in seeking revival of the judgment. Plaintiff conceded this much at oral argument. Plaintiff has not alleged that defendant's motion to revive judgment was brought outside of its regular function. To the extent that plaintiff alleges that defendant abused process by bringing suit without standing, for the reasons explained above, that argument is precluded by the doctrine of issue preclusion. As a result, I will dismiss plaintiff's claim for abuse of process.

### C. Missouri Merchandising Practices Act

Plaintiff alleges that defendant violated the Missouri Merchandising Practices Act, RSMo. § 407.025 ("MMPA"), by using deception, false pretenses, misrepresentation, factual omissions and unfair business practices in connection with its attempts to collect on plaintiff's debt. Defendant argues that plaintiff has failed to state a claim under the MMPA because its

13

alleged collection practices were not "*in connection with* the sale or advertisement of any merchandise" as defined by the MMPA. RSMo. § 407.020 (emphasis added).

"[S]ection 407.020.1 [of the MMPA] makes the 'act, use or employment by any person' of any unfair or deceptive practice done '*in connection with* the sale or advertisement of any merchandise' unlawful." Conway v. CitiMortgage, Inc., 438 S.W.3d 410, 414 (Mo. 2014) (emphasis included). "The use of an unlawful practice is a violation of the MMPA 'whether committed before, during or after the sale,' so long as it was made 'in connection with' the sale." Id. (citing § 407.020.1.[10]

The Missouri Supreme Court has held that a loan servicer may be subject to the MMPA when it is alleged to have committed fraud and deception even when the loan was originally sold by another party. Id. at 412. In reaching that holding, court reasoned that the extension of credit, which in that case was a mortgage, "create[ed] a long-term relationship in which the borrower and the lender continue to perform various duties, such as making and collecting payments over an extended period of time." Id. at 415. However, the court clarified that a loan servicer does not act "in connection with" the initial sale of a loan when it attempts to modify the loan terms because it is no longer enforcing the terms of the original loan. Watson v. Wells Fargo Home Mortg., Inc., 438 S.W.3d 404, 406 (2014). Likewise, the Eighth Circuit found Conway distinguishable in a case where a loan trustee assumed a debt but "did not assume a continuing duty to service [the borrower's] loan." Wivell v. Wells Fargo Bank, N.A., 773 F.3d 887, 895 (8th Cir. 2014). Instead, the trustee had a "narrow, contingent role" in the event of default – to

---

[10] Plaintiff also must have alleged that: (1) she made a purchase; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property as a result of an act declared unlawful by § 407.020. Conway v. CitiMortgage, Inc., 438 S.W.3d 410, 417 n. 3 (Mo. 2014) (internal citations omitted). Plaintiff made these allegations in the complaint, and they are not at issue.

collect (rather than service) the loan, and therefore did not act "in connection with" the sale of the original loan. Id.

Defendant argues that this case is more like Wivell than Conway and defendant's alleged actions were not done "in connection with" the sale of the Sears credit. I agree. First, the relationship established by the use of a consumer credit card is different from the relationship created by parties to a mortgage loan, which is more complex, long-term, and imposes greater duties on the parties to the loan. Second, even if the two were sufficiently analogous for MMPA purposes, once the state court entered default judgment against plaintiff in the debt collection lawsuit, the Sears line of credit ceased to be an ongoing "loan" and became a judgment. When Sears assigned the judgment to defendant, defendant "did not assume a continuing duty to service" a loan. See Wivell v. Wells Fargo Bank, N.A., 773 F.3d 887, 895 (8th Cir. 2014). Rather, defendant had a "narrow, contingent role," namely, to collect on the judgment. See id. As a result, defendant's duties were not performed "in connection with" Sears' initial extension of credit to plaintiff and I find that plaintiff has failed to state a claim for relief under the MMPA.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant LVNV's Motion to Dismiss #[16] is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiff shall file an amended complaint in accordance with the terms of this Order no later than **September 23, 2015**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of September, 2015.